(November 12, 1991)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NELSON OTERO, Appellant.—Judgment, Supreme Court, New York County (Jay Gold, J., at plea and sentence), rendered May 28, 1987, convicting defendant of criminal possession of a controlled substance in the second degree and sentencing him to an indeterminate term of imprisonment of from three years to life, unanimously affirmed.

Defendant's appeal was held in abeyance, and the case remanded for a hearing on defendant's motion to controvert the search warrant. Following the hearing, the court rejected defendant's challenge that the warrant was overly broad. We now affirm.

The warrant was supported by two affidavits. The first described the premises as a one-family dwelling and reflected that one purchase of cocaine was made in the "first room on the right" of "the premises entrance door." A second purchase

was made two days later "upstairs" in "the first room on the right." Several days later, an amended application for a warrant was submitted to the court, together with a second affidavit reflecting that the one-family dwelling was in fact a four-floor dwelling, and that "further investigation", revealed that the "fourth floor is being utilized by a tenant unrelated to J.D. Nelson." Subject to this amendment, the first warrant and affidavit were incorporated in the second application.

Most of the People's direct case at the hearing was struck from the record. The hearing court however took cognizance of one officer's testimony that he had been advised by the Department of Buildings that defendant owned the entire building, and by Con Edison that defendant was billed, and paid for, electric service at the building.

Defendant's former counsel testified that he visited the subject four-story building in anticipation of preparing a motion to suppress. There were four mailboxes on the outside. A stoop led to the main entrance. A second door led to the ground level. The bathroom in the apartment to the right of the lower entrance had no door. A second apartment on the ground floor had baths, a bar, and a large sink. Counsel said that he had been advised that this apartment was used for parties. Entry to the main floor was blocked by a bolted door.

The room to the right of the main doors contained a bed, stereo, and a refrigerator. Counsel said that at the rear of this floor was a door with two locks. Counsel had been advised that defendant leased this area to his brother, William Otero. An apartment occupied the entire third floor. There was a bath and a kitchen. Two rooms in the apartment had been "gutted". There was a fourth floor apartment in the building that was rented.

Defendant did not satisfy his burden of showing that the warrant was overly broad. *(See generally, People v Berrios,* 28 NY2d 361.) While, for purposes of satisfying the State and Federal constitutional requirements, the searching of two or more residential apartments in the same building is no different from searching two or more separate residential houses *(People v Rainey,* 14 NY2d 35, 37), if the police make a factual mistake and describe a place to be searched in broader terms than appropriate, the validity of the warrant turns on the information available to them when they acted. *(Maryland v Garrison,* 480 US 79, 85.) Here the information contained in the affidavits in support of the warrants and the remaining evidence at the hearing do not show that the police knew or should have known that the second floor was divided into

separate living spaces. The fact that the police made further inquiries is reflected in the second affidavit in support of the warrant. Undoubtedly it would not have been a simple matter for the police to gain entry into the building for the purpose of surveying it like counsel did. Indeed, counsel's report of his survey served to confirm the claim that defendant was in the process of modernizing the building. Concur—Murphy, P. J., Sullivan, Carro, Kassal and Smith, JJ.